**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EDWARD A. STICKEL,                  )
                                    )
            Plaintiff,              )
                                    )
        v.                          )        Civil Action No. 14-00381
                                    )        Judge Nora Barry Fischer
CAROLYN W. COLVIN,                  )
ACTING COMMISSIONER OF              )
SOCIAL SECURITY,                    )
                                    )
            Defendant.              )

## MEMORANDUM OPINION

### I.       INTRODUCTION

Edward A. Stickel ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final determination of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying his applications for supplemental security income ("SSI") under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1600 *et seq.*, and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 404-434.  The record has been

developed at the administrative level and the parties have brought cross-motions for summary

judgment. For the following reasons the Court finds that the decision of the Administrative Law

Judge ("ALJ") is not supported by substantial evidence.  Accordingly, Plaintiff's Motion for

Summary Judgment (Docket No. 9) is granted, in part, and denied, in part, and Defendant's

Motion for Summary Judgment (Docket No. 12) is denied.

## II.    PROCEDURAL HISTORY

On February 3, 2011 and February 7, 2011, Plaintiff applied for SSI and DIB, respectively, (R. at 13),[1] alleging physical disability starting May 18, 2007. (*Id*.).  His initial claim was denied on April 11, 2011.  (*Id*.).  He then requested a hearing by an ALJ, which was granted.  (R. at 82).    On August 14, 2012, a hearing was held before ALJ Leslie Perry-Dowdell, which Plaintiff attended with counsel, Valerie Sylves, Esquire. (R. at 28).    Plaintiff and a vocational expert, Charles M. Cohen,[2] each testified.  (R. at 28-39).  On October 18, 2012, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (R. at 13-21). On November 1, 2012, Plaintiff filed a request to the Appeals Council to review the ALJ's decision, (R. at 7-9), and such request was denied on February 10, 2014. (R. at 1-6).

On March 25, 2014, Plaintiff, having exhausted all administrative remedies, filed a Complaint in this Court.  (Docket No. 3).  Defendant filed her Answer on May 30, 2014. (Docket No. 6). On June 27, 2014, Plaintiff filed a Motion for Summary Judgment, Concise Statement of Material Facts and Brief in Support.  (Docket Nos. 9, 10, 11). Defendant filed a Motion for Summary Judgment and supporting brief on July 30, 2014. (Docket Nos. 12, 13).

## III.    FACTS

### A.    General Background

Plaintiff was born on April 27, 1964 and was forty-three years old on the date of his alleged disability onset and forty-eight years old on the date of the ALJ's decision denying benefits. (R. at 19, 149, 154). In his applications for SSI and DIB, Plaintiff alleged disability due

---

[1].    Citations to ECF No. 7, the Record, hereinafter "R. at __."
[2]     Charles M. Cohen, Ph.D. is a Board Certified Vocational Expert and a licensed Psychologist in Pennsylvania.  He received his Masters Degree in Rehabilitation Counselling from the University of Pittsburgh in 1966 and his Ph.D. in Counselor Education from same in 1970. He has worked as a vocational expert for the Social Security Administration since 1973, and he has maintained a private practice of Rehabilitation Psychology, including vocational rehabilitation, since 1970. (R. at 106).

to chronic obstructive pulmonary disease ("COPD")[3], chronic low back pain due to a bulged disk, an enlarged liver, and tinnitus.[4] (R. at 149-160). Plaintiff is a high school graduate, with 2 years of college, (R. at 180), and he served in the United States Air Force from June of 1985 to April of 1988. (R. at 149, 156). He is divorced and has no children. (R. at 150, 508). His work history consists of positions as a dishwasher, stock person, machine operator, and home care provider. (R. at 180, 186). He was laid off at his last position as a home care provider on May 10, 2004. (R. at 179). He was living in Alaska from February through October of 2009, at which time he returned to Pittsburgh to help care for his mother who was afflicted with Alzheimer's. (R. at 298).

Plaintiff previously applied for both SSI and DIB on September 29, 2005 but his claims were denied at the hearing level in a decision dated May 17, 2007.[5] (R. at 41). In a Function Report-Adult dated March 6, 2011, Plaintiff indicated that he lived in a house with his parents, and engaged in daily activities such as cleaning and doing laundry, cooking small meals, looking after his parents, doing jig-saw puzzles, watching television, and using the computer. (R. at 195, 197).

---

[3]    COPD is "a progressive disease that makes it hard to breathe… In the United States, the term "COPD" includes two main conditions—emphysema and chronic bronchitis… Most people who have COPD have both emphysema and chronic bronchitis." *See nhlbi.nih.gov,* "What is COPD," *available at:* https://www.nhlbi.nih.gov/health/health-topics/topics/copd/. (Last visited: October 21, 2014.)

[4]    Tinnitus is "noise or ringing in the ears…Although bothersome, tinnitus usually isn't a sign of something serious." *Mayo Clinic, Diseases and Conditions: Tinnitus, definition, available at:* http://www.mayoclinic.org/diseases-conditions/tinnitus/basics/definition/con-20021487. (Last visited: October 21, 2014.)

[5]    The decision on the prior applications for SSI and DIB is not part of the administrative record in this case.

## B.     Medical History

### 1. Chronic Low-Back Pain

Plaintiff has had chronic low back pain since the 1980s, which he attributes to injuries sustained during his service in the Air Force.[6]  (R. at 300).  An MRI performed on his lumbar spine in 2002 showed degenerative changes, a diffuse bulge, and an annular tear/small hernia in his L5-S1 disc[7]. (R at 299).

Plaintiff lived in Alaska for part of 2009, and reportedly received treatment for his back pain and COPD at the VA in Alaska from February 15, 2009 through October 30, 2009.  (R. at 182).   Shortly after returning to Pittsburgh from Anchorage, Alaska, Dr. Joan Mavrinac diagnosed Plaintiff with acute exacerbation of chronic low back pain during an emergency room visit on November 23, 2009 and administered two 1-mg Dilaudid[8] IVs. (*Id*.). Plaintiff then had a follow-up appointment with Dr. Russell Traister, on December 7, 2009. (R. at 285-86). During this visit, Plaintiff presented with constant numbness on his right leg and left lateral 2 fingers. (R. at 289).   He also suffered from shooting pains intermittently down his right buttock and leg, reported pain in every position except for lying on either side, and the pain forced him to walk with a limp. (*Id.*).  He was observed walking with an antalgic gait. (R. at 290).  Dr. Traister noted that Plaintiff presented degenerative changes in his lumbar spine, in addition to a diffuse bulge, and annular small tear. (*Id.).*   As a result of the worsening pain in Plaintiff's back, Dr. Traister recommended that Plaintiff be given a repeat MRI. (R. at 291).

---

[6]     The Court notes that the medical records from the VA state that Plaintiff does not have a service related injury.

[7]     The L5-S1 disc, or "Lumbosacral Joint," "lies between the L5 and S1 vertebrae, [and] can lead to leg pain and/or lower back pain if the inner portion of the disc herniates or if the disc degenerates. *All about L5-S1(Lumbosacral Joint). Spine-Health, available at:* http://www.spine-health.com/conditions/spine-anatomy/all-about-l5-s1-lumbosacral-joint. (Last visited: October 21, 2014.)

[8]   Dilaudid (hydromorphone) is an opioid pain medication. *See Drugs.com,* "Dilaudid," *available at:* http://www.drugs.com/dilaudid.html. (Last visited: October 21, 2014.)

On January 26, 2011, Plaintiff activated the EMS and was transported by the Rostraver/West Newton ES Service to the Monongahela Valley Hospital ER with abdominal pain. (R. at 350). While awaiting the paramedics in his driveway, he stated that he had pain in his back that was aggravated by deep breathing. (*Id.*). When he arrived at the Emergency Department of Monongahela Valley Hospital, Plaintiff complained of pain radiating from his right side to his back. (R. at 256). During that visit, he saw Dr. Robert Smith who ordered a CT scan of his abdomen, and prescribed protonix[9]. (R. at 264). The main finding of the CT scan consisted of multiple non-obstructive bilateral renal calculi[10], the largest of which was approximately 6mm in diameter and located in the left kidney. (R. at 269).

Plaintiff underwent another CT scan on February 11, 2011. (R. at 330). Analysis of the scan revealed, along with the non-obstructive bilateral renal calculi, a straightening of the lumbar spine compatible with possible muscle spasms, moderate to marked narrowing of the L5-S1 disc space, and moderate to marked degenerative disc disease at L5-S1. (R. at 330-32). Plaintiff was prescribed tramadol[11] and flexeril[12] for pain control. (R. at 345).

---

[9]    Pantoprazole (Protonix) treats gastroesophageal reflux disease (GERD), damage to the esophagus, and high levels of acid in the stomach. This medicine is a proton pump inhibitor (PPI). *See PubMed Health*, "Pantoprazole (by mouth)," *available at*: http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011580/?report=details. (Last visited: October 21, 2014).

[10]    A calculus is a "concretion formed in any part of the body, most commonly in the passages of the biliary and urinary tracts; usually composed of salts of inorganic or organic acids, or of other material such as cholesterol." STEDMAN'S MEDICAL DICTIONARY 289 (28th ed. 2006). In this case, the concretion was in the Plaintiff's kidney—a kidney stone.

[11]    Tramadol is used to relieve moderate to moderately severe pain, including pain after surgery. The *extended-release or long-acting tablets* are used for chronic ongoing pain. Tramadol belongs to the group of medicines called opioid analgesics. It acts in the central nervous system (CNS) to relieve pain. *See PubMed Health*, "Tramadol (by mouth)," *available at:* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/. (Last visited: October 21, 2014).

[12]    Flexeril (cyclobenzaprine) is used to help relax certain muscles in your body. It helps relieve the pain, stiffness, and discomfort caused by strains, sprains, or injuries to your muscles. *See PubMed Health*, "Cyclobenzaprine (by mouth)," *available at:* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009767/. (Last visited: October 21, 2014).

During an April 29, 2011 visit to the VA Hospital at Oakland, Plaintiff reported with a loss of normal lumbar lordosis[13] and a suggestion of minimal retrolisthesis[14] at the L5-S1 level. (R. at 328). There were also degenerative changes with marginal osteophyte formation and sclerosis. (*Id.*). A CT scan indicated degenerative changes of the lumbosacral spine. (R. at 330).

Plaintiff was admitted as an inpatient to the Jefferson Regional Medical Center from May 14, 2011 to May 17, 2011 with ureterolithiasis[15] and a urinary tract infection. (R. at 364). He was subjected to cystoscopy[16], retrograde, and a stent was inserted. (*Id.*). During this visit, it was noted that Plaintiff had full musculoskeletal range of motion. (R. at 356). Plaintiff discussed physical therapy for his back pain. (R. at 334). He stated that he did not have a vehicle, which presented a problem for him because physical therapy occurs more than once weekly and the VA van only operated on Fridays. (*Id*). Following his hospital stay, on June 1, 2011, Plaintiff was administered extracorporeal shock wave lithotripsy as an outpatient at Jefferson Regional Medical Center. (R. at 367). During the procedure the kidney stone appeared to break up. (R. at 367). Plaintiff returned to Jefferson Regional Medical Center on June 23, 2011 to have the stent removed. (R. at 402).

On December 2, 2011, Plaintiff was examined by Rhonda S. Wingrove, M.D. (R. at 483). Dr. Wingrove noted that Mr. Stickel had been provided a chest x-ray on November 25,

---

[13] Lordosis refers to the inward curve of the lumbar spine (just above the buttocks). A small degree of lordosis is normal. Too much lordotic curving is called swayback (lordosis). *See MedlinePlus*, "Lordosis," *available at*: http://www.nlm.nih.gov/medlineplus/ency/article/003278.htm. (Last visited: October 21, 2014).

[14] A retrolisthesis is a posterior displacement of one vertebral body with respect to an adjacent vertebrae to a degree less than a luxation. Typically a vertebra is said to be in a retrolisthesis position when it translates (slides) backward with respect to the vertebra below it. *See headtobackhealth.com*, "Retrolisthesis," *available at:* http://www.headbacktohealth.com/Retrolisthesis.html. (Last visited: October 21, 2014).

[15] Ureterolithiasis is the presence of calculi (kidney stones) in the ureter. *See Dictionary.com*, "Ureterolithiasis," *available at*: http://dictionary.reference.com/browse/ureterolithiasis. (Last visited: October 21, 2014).

[16] Cytoscopy is a procedure to see the inside of the bladder and urethra using a telescope. *See MedlinePlus*, "Cytoscopy," *available at*: http://www.nlm.nih.gov/medlineplus/ency/article/003903.htm. (Last visited: October 21, 2014).

2011 and opined that he suffered from musculoskeletal strain. (R. at 484). She instructed the use of heat and ice and prescribed Vicodin[17] 5-500 mg to use for the pain. (*Id.*).

On January 11, 2012, Plaintiff presented to Dr. Wingrove with complaints of back pain radiating into his ribs and he was then referred to Paul Depippo, M.D. (R. at 490). X-ray imaging noted that he did not sustain a rib fracture on this occasion. (R. at 510). But, the objective findings included that the bony and soft tissues demonstrate degenerative changes of the thoracic spine. (R. at 510-512).

In March of 2012, Plaintiff presented to the emergency room at the Jefferson Regional Memorial Hospital with left flank pain which he said had persisted for three months without any resolution. (R. at 387-389). It was noted as likely musculoskeletal in nature but x-rays were negative. (*Id.*). In April of 2012, Plaintiff again sought treatment complaining of pain in his rib area. A "new" minimally displaced fracture of Plaintiff's tenth posterior rib was noted on a CT scan performed April 14, 2012. (R. at 409). No surgery was needed. Hence, he was treated symptomatically.[18] (R. at 441).

### 2. Chronic Obstructive Pulmonary Disease (COPD), Enlarged Liver / Hepatitis C, and Obesity

---

[17] Hydrocodone and acetaminophen combination (Vicodin) is used to relieve moderate to moderately severe pain. *See PubMed Health,* "Hydrocodone/Acetaminophen (By mouth)," *available at:* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010590/. (Last visited: October 21, 2014).

[18] Also, medical imaging of Plaintiff's ribs on May 29, 2012 showed healing fractures of his sixth, seventh, and eighth ribs. (R. at 543). But, such evidence was not presented to the ALJ. (R. at 541-546; 547-557). Plaintiff has not moved for a sentence six remand pursuant to § 405(g) of the Social Security Act. (Docket No. 11). A remand is only warranted under sentence six if the records constitute "new" and "material" evidence and Plaintiff establishes "good cause" for failing to present it to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 592–93 (3d Cir. 2001).

Mr. Stickel has been prescribed an albuterol[19] inhaler since at least November 18, 2009. (R. at 289). He was administered two lung function tests in late 2011. The first was administered on October 19, 2011. (R. at 496). The second test was performed approximately three weeks later on November 8, 2011. (R. at 494). The first test showed significant impairments to Plaintiff's respiratory abilities, indicating severe obstructive airway disease. (R. at 496). However, the next test showed significant improvements, and indicated only mild to moderate obstructive airway disease. (R. at 494). Mr. Stickel has also continued to smoke cigarettes despite his COPD and the repeated advice of his doctors. (R. at 282, 294, 338, 381, 448).

Plaintiff's medical records consistently document fatty infiltration of his liver. (R. at 330-33, 394, 408, 461, 493). However, the record shows little regarding his hepatitis C diagnosis, apart from the presence of antibodies discovered in March of 2011. (R. at 339, 466). At the time of his hearing before the ALJ, Plaintiff was not taking medication or receiving treatment related to his hepatitis C diagnosis.

Plaintiff is 5'9" tall. (R. at 463). His weight has increased over time. (*Id*.). In December of 2009, he weighed 202 pounds. (*Id*.). As of April 15, 2011, Plaintiff weighed 230 pounds and had a BMI of 33.94. (*Id*.). Plaintiff's weight then increased in March of 2012 to 247 pounds and remained around the same during later examinations in September and November of 2012. (R. at 448, 550). The treatment notes indicate that at various times, Plaintiff discussed the health risks of obesity with medical professionals and a possible referral to weight loss programs both within and outside the VA, but he opted to try to lose weight independently and declined the referral. (R. at 348).

---

[19] Albuterol is used to treat or prevent bronchospasm in patients with asthma, bronchitis, emphysema, and other lung diseases. This medicine is also used to prevent wheezing caused by exercise (exercise-induced bronchospasm). *See PubMed Health,* "Albuterol (By breathing)," *available at*: http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0008848/?report=details. (Last visited: October 21, 2014).

### 3. Medical Opinions

Nghia Van Tran, M.D., a state agency physician, conducted a review of the record and prepared Disability Determination Explanations for the SSI claim on March 21, 2011 and for the DIB claim on April 11, 2011.[20] (Docket Nos. 43-56). The initial evidence considered as to both claims included records from the Monongahela Valley Hospital received on March 17, 2011; medical records from the VA Pittsburgh Healthcare System received on March 11, 2011; and, functional reports and work history information provided by Plaintiff. (R. at 41; 50).

With respect to the DIB claim, Dr. Tran assessed Plaintiff with severe medical impairments including a discogenic[21] and degenerative back disorder and COPD. (R. at 51). However, Dr. Tran found that there was insufficient evidence to substantiate the presence of any disorders under the relevant Listings and that "[t]here is insufficient medical evidence in the available medical records for evaluation and determination of disability prior to the [date last insured] of 03/31/2008." (R. at 51). Hence, Dr. Tran found that Plaintiff was not disabled as to the DIB claim. (R at 53).

As to the SSI claim, Dr. Tran likewise noted that Plaintiff had a severe back disorder and COPD. (R. at 42). Dr. Tran evaluated the relevant medical evidence and made findings as to the SSI claim. (R. at 42-48). To this end, Dr. Tran found that Plaintiff's statements as to the severity of his symptoms were only "partially credible." (R. at 43). He also assessed Plaintiff with the following exertional limitations: occasionally able to lift or to carry 20 pounds and frequently able to lift or carry 10 pounds; sit or stand for about six hours in an eight-hour workday; and

---

[20] Phyllis Brentzel, Psy.D., a state agency psychologist, concluded on both forms that Plaintiff did not have a mental disability. (Docket Nos. 43-49). As the ALJ's findings as to mental disabilities are not challenged on appeal, the same are not addressed here.

[21] Discogenic back pain, or lumbar disc pain, is thought to be due to degeneration, or wearing out, of the lumber intervertebral discs. *See NYU Langone Medical Center, Department of Anesthesiology, Division of Back Pain,* "Discogenic pain", *available at*: http://pain-medicine.med.nyu.edu/patient-care/conditions-we-treat/discogenic-pain. (Last visited: October 21, 2014).

otherwise unlimited in his ability to push and pull. (R. at 44). Dr. Tran assessed postural limitations stating that Plaintiff could only occasionally: climb ramps/stairs; climb ladders/ropes/scaffolds; balance; stoop; kneel; crouch; and crawl. (R. at 44-45). Overall, Dr. Tran noted that although Plaintiff's medically determinable physical impairments could be expected to cause pain or other symptoms, the persistence, severity, and functionally limiting effects of his symptoms were not substantiated by the medical evidence alone. (*Id*.). Dr. Tran, thus, found Plaintiff's statements regarding his symptoms partially credible and opined that he was not disabled. (*Id*. at 43, 47).

### C.    Plaintiff's Testimony

On August 14, 2012, Plaintiff appeared with the assistance of counsel at a hearing before the ALJ, Leslie Perry-Dowdell. (R. at 26). At the hearing, Plaintiff testified that his ability to work was restricted because his "back problems [had] gotten worse." (R. at 30). Plaintiff further stated that he had been taking Methocarbamol[22] and Naprosyn[23] for his back pain since 1988 or 1989, but that it seemed less effective. (R. at 31). He testified that he had been to physical therapy, which helped, but that the relief would "fade… [after] about a half an hour." (R. at 31-32).

In terms of his daily activities, Mr. Stickel testified that he engaged in vacuuming, dusting and cooking. (R. at 32). Plaintiff also explained that he rarely left the house to socialize, and that the last time he left was to "go to a friend's house" about "four or five months" before the hearing. (R. at 32). On such visits, he would "watch TV, cook, and [converse]." (R. at 33).

---

[22] Methocarbamol is used to relieve the discomfort caused by acute (short-term), painful muscle or bone conditions. *See PubMed Health*, "Methocarbamol," *available at*: http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0001156/. (Last visited: October 21, 2014).

[23] Naprosyn (naproxyn) is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve symptoms of arthritis (osteoarthritis, rheumatoid arthritis, or juvenile arthritis) such as inflammation, swelling, stiffness, and joint pain. *See PubMed Health*, "Naproxyn," *available at*: http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011337/. (Last visited: October 21, 2014).

Plaintiff also stated that he was able to walk "about a quarter-mile" before his back pain became severe and made it "difficult to walk." (*Id*.).

When asked how much he was able to lift, Mr. Stickel responded that he hadn't "really lifted anything since November because [he had] three broken ribs." (*Id*.). Plaintiff further testified that he first broke his eighth rib in November, then re-broke it in February, and then broke the sixth and seventh ribs in his back in June. (*Id*.). He stated that he broke the ribs while coughing. (*Id*.).

Plaintiff testified that he was unable to sit for more than thirty minutes at a time. (R. at 34). He also claimed that he was unable to stand upright for more than ten or fifteen minutes, and that he has to lie down for approximately 45 minutes several times daily in order to relieve his back pain. (R. at 35). However, Plaintiff explained that he "pretty much" does not have a problem shopping, carrying groceries or pushing a shopping cart. (*Id*.).

### D.     Vocational Expert Testimony

A vocational expert, Dr. Cohen, testified without objection by either Plaintiff or his counsel. (R. at 36). Dr. Cohen asserted that Plaintiff's past work as a home health care aide was considered medium, semi-skilled work. He also opined that Plaintiff's work as a dishwasher was medium, unskilled work; his work as a retail stockperson was considered light and semi-skilled; and his machine operator job would be considered heavy, unskilled work. (*Id*.). The ALJ asked the vocational expert whether a hypothetical person limited to light work could perform Plaintiff's past work, and the vocational expert replied that the hypothetical person could not. (R. at 36-37). In response to further questioning, the vocational expert testified that there were over one million occupations in the national economy that such a person would be able to perform, including light inspector, light packing, and light assembler jobs. (R. at 37).

The ALJ posed an additional hypothetical in which a worker could only perform light, sedentary work, where the individual was standing and walking for only two hours in an eight-hour work day. The vocational expert replied that there were over 100,000 sedentary inspector jobs, over 120,000 sedentary assembly jobs, and over 150,000 sedentary packer jobs in the national economy. (R. at 37-38).

Finally, the ALJ asked if there were any jobs in the national economy where an individual could only perform light work, but had to change positions between sitting and standing every half-hour. (R. at 38). Dr. Cohen replied that there were, but that the numbers from the previous hypothetical would be reduced by about half. (*Id*.).

Plaintiff's counsel then asked whether an employee from the ALJ's final hypothetical would be able to sustain employability if such an individual "would be off-task approximately 10 percent of the day consistently because of unscheduled breaks." (*Id*.). The vocational expert, Dr. Cohen, replied that such a person would not be able to sustain employability. (*Id*.).

## IV.    Standard of Review

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Cooper v. Comm'r*, 563 F. App'x 904, 910 (3d Cir. 2014); *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at Step Five to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckle*r, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute and is plenary as to all legal issues. 42 U.S.C. §§ 405(g),[24] 1383(c)(3);[25] *Hagans v.*

---

[24] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

42 U.S.C. § 405(g).

[25] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

*Comm'r*, 694 F.3d 287, 292 (3d. Cir. 2012) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999)). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is "'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. *Hagans*, 694 F.3d at 292 (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999)); *see also Horst v. Comm'r*, 551 F. App'x 41, 45 (3d Cir. 2014). A district court can neither conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the Court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947); *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). The Court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196-97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190-91 (3d. Cir. 1986).

V.      **Discussion**

    **A. The ALJ's Decision**

The ALJ found for purposes of DIB that the Plaintiff met the insured status requirements of the Social Security Act through March 31, 2008, but not thereafter. (R. at 15). Judge Leslie Perry-Dowdell also decided that Plaintiff has not engaged in substantial gainful activity since May 18, 2007, the alleged disability onset date. (*Id.*). Furthermore, she noted that the record did not contain "a single encounter with the medical community between the alleged onset date and the date last insured." (*Id.*). Because of this lack of evidence, the ALJ determined that Plaintiff "has not proven the existence of one or more severe medically determinable impairments," and was not disabled on or prior to March 31, 2008. (*Id.* at 16). The ALJ then concluded that Plaintiff was unable to qualify for DIB benefits under Title II of the Social Security Act. (*Id.*).

The ALJ next analyzed the SSI claim. Despite finding the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease, history of hepatitis C infection with an enlarged liver, and mild morbid obesity; the ALJ determined that Mr. Stickel did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ assessed the Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can only occasionally climb ramps and stairs, and he cannot climb ropes, ladders, or scaffolds. He can occasionally balance, kneel, crouch, and crawl. He cannot work in extreme heat or cold, or in the presence of high levels of dust, fumes, gases, smoke, or other pulmonary irritants.

(*Id.* at 17). In support of the RFC finding, the ALJ provided an evaluation of the evidence, which included the types and dosages of the medications prescribed to the Plaintiff, as well as a medical report from a VA facility where the Plaintiff received treatment prior to filing for benefits, which stated that Plaintiff was "returning home to his parents [sic] house who have dementia. He is

their sole caretaker and will be returning home to assist." (*Id*. at 18). The ALJ reasoned that, "presumably, if the Claimant were unable to handle his own activities of daily living, he would be unable to shoulder the additional burden of caring for two ailing, elderly adults." (*Id*.). The ALJ concluded that Plaintiff did not have a mental health impairment that was "severe" and would not interfere with his daily living activities or social functioning. (*Id.*).

The ALJ next considered Plaintiff's "erratic work history," lack of "ongoing physical therapy," and a report from his primary care physician who described him as having a "normal gait... that he [was] able to get up and down without difficulty... [and] appears to have full range of motion of the spine." The ALJ concluded that this evidence was "simply not consistent with an allegation that claimant's low back pain is too severe to permit work." (*Id*.).

In assessing the impact of Plaintiff's COPD on his ability to work, the ALJ considered evidence provided by pulmonary function tests that Plaintiff underwent in October 2011 and November 2011, and determined that "given the presence of mild to moderate lung disease on pulmonary function studies, and inasmuch as <u>the claimant continues to smoke cigarettes</u> despite his allegedly disabling lung disorder, the Administrative Law Judge simply cannot credit his assertion that breathing problems prevent him from working." (*Id*.) (emphasis in original).

The ALJ then noted evidence in the record concerning Plaintiff's claims that his hepatitis C diagnosis and enlarged liver prevent him from working, yet he drinks alcohol and "has not required inpatient or intensive outpatient management of any liver disorder and... nothing in the record... suggest[s] that light work would have a deleterious effect on his liver function." (*Id*.).

With regard to Plaintiff's obesity, the ALJ stated:

> Nor does the claimant's mild obesity impose additional limitation on his ability to do a light job. No doctor has suggested that the claimant's weight limits the types of environments he can work in,

> or that his size impairs his ability to do fine and gross manipulative
> activities.

(*Id*.).  The ALJ continued that Plaintiff was unable to return to his past relevant work but alternatively found that he was functionally able to perform other light, unskilled jobs that exist in significant numbers in the national economy, i.e., inspector, packer, or assembler. (*Id*. at 19-20). Finally, the ALJ held that plaintiff was not under a disability, as defined in the Social Security Act, from May 18, 2007, through October 18, 2012. (*Id*. at 20).  In evaluating Plaintiff's RFC and finding that he could perform light work, the ALJ stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96–4p and SSR 96–7p."  (R. at 17).  She also claimed to have evaluated opinion evidence "in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96–2p, 96-5p, 96–6p and 06–3p." (*Id*.).

### B. Plaintiff's Objections to the ALJ's Decision

Plaintiff argues the following on appeal before this Court: (1) the ALJ erred in assessing Plaintiff's RFC finding that Plaintiff could perform a range of light work; and (2) the ALJ did not appropriately consider Plaintiff's recurrent renal stones to be a severe impairment. (Docket 11).[26]  Defendant responds that the ALJ's decision was supported by substantial evidence. (Docket No. 13).  For the following reasons, the Court agrees with Plaintiff that the ALJ's decisions to deny Plaintiff's claims for DIB and SSI are not supported by substantial evidence.

### C. Analysis of Plaintiff's Arguments

#### 1. RFC finding of "light work"

---

[26]  Again, Plaintiff is not challenging the ALJ's decision with respect to her evaluation of his mental or psychological impairments.  Accordingly, the Court focuses its decision on the challenge to the ALJ's assessment of his physical ailments.

Plaintiff asserts that the ALJ's RFC analysis was impermissibly based entirely on the ALJ's own medical judgment and that the ALJ committed reversible error by failing to obtain an expert medical opinion. (Docket No. 11).  Defendant counters that the ALJ properly relied on the evidence of record, including the medical evidence, to arrive at her decision denying benefits. (Docket No. 13).  Having fully considered the parties' arguments and the entirety of the administrative record developed before the agency, the Court finds that the ALJ's RFC determination that Plaintiff is capable of performing a range of light work is not supported by substantial evidence.

It is well established that "[t]he ALJ-not treating or examining physicians or State agency consultants-must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011). RFC is defined as "the most you can still do despite your limitations. [The ALJ] will assess [a claimant's] residual functional capacity based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945 (a)(1).  Relevant evidence that the ALJ must consider includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Moreover, the ALJ's RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). "[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Id.*

Here, Plaintiff challenges the ALJ's RFC assessment that he was capable of performing "light work as defined in 20 C.F.R. § 416.967(b) except that he can only occasionally climb

ramps and stairs, and he cannot climb ropes, ladders, or scaffolds. He can occasionally balance, kneel, crouch, and crawl. He cannot work in extreme heat or cold, or in the presence of high levels of dust, fumes, gases, smoke, or other pulmonary irritants." (R. at 17). Given Plaintiff's age, he is a "younger individual" under the regulations, and a finding that he was capable of only sedentary work rather than light work would have dictated a finding that he is disabled. *See* 20 C.F.R. § 404, app. 2 ("a finding of 'disabled' is warranted for individuals age 45–49 who: (i) Are restricted to sedentary work"); *see also Zavilla v. Astrue*, 2009 WL 3364853 at * 15 (W.D. Pa. Oct. 16, 2009). Accordingly, the decision granting or denying benefits in this case largely surrounds whether Plaintiff is limited to light or sedentary work.

The Commissioner primarily defends the ALJ's decision denying benefits on the basis that her RFC assessment is "wholly consistent" with a medical opinion of Dr. Tran which is part of the administrative record. (Docket No. 13). It is true as Defendant argues that Dr. Tran, a non-examining, non-treating state agency review consultant, reviewed the medical evidence available in March of 2011 and opined that Plaintiff was capable of a range of light work with certain limitations for purposes of the SSI claim. (R. 44-45). Dr. Tran also conducted a second assessment, finding that Plaintiff was not disabled due to insufficient evidence during the relevant period as to the DIB claim. However, Plaintiff correctly points out that the ALJ's decision does not contain any reference to Dr. Tran's evaluations for DIB or SSI, and makes no findings as to the weight she gave to Dr. Tran's opinions, if any. Instead, the ALJ's opinion contains a rote statement that opinion evidence was considered "in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96–2p, 96-5p, 96-6p and 06-3p." (R. at 17). Each of these regulations and rulings proscribe that it is the ALJ's responsibility to consider medical opinion evidence and to denote the weight, if any, given to the medical opinion evidence in the

ALJ's assessment of the RFC and disability claim. *See* 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. Due to the absence of any findings regarding Dr. Tran's opinions, this Court cannot conclude that Dr. Tran's assessment provides the supporting basis for the ALJ's RFC determination and the agency's decision is not due deference. *See Fargnoli*, 247 F.3d at 43. Further, the applicable standard of review precludes this Court's ability to substitute its own factual findings, or those proposed by Defendant on appeal, in order to rectify a lack of factual findings in the ALJ's decision on a particular issue. *See Fargnoli*, 247 F.3d at 44 n. 7 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (noting that the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")). Accordingly, remand is warranted for further consideration of Plaintiff's SSI and DIB claims. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

In reaching this decision, the Court is mindful of Defendant's position that *Chandler* permits an ALJ to rely on the state agency file examiner's opinion in crafting a claimant's RFC. (Docket No. 13). Certainly, as discussed above, an opinion by a state agency file examiner represents an opinion of the claimant's workplace abilities by a physician that must be considered by the ALJ in accordance with the aforementioned precedent. *See Chandler,* 667 F.3d at 361. As this is medical opinion evidence, the ALJ may rely on it in formulating an RFC. Even if the ALJ had expressly relied on Dr. Tran's assessments, which she did not, the Court disagrees with Defendant's contention that the ALJ's RFC finding is "wholly consistent" with Dr. Tran's evaluations.

To this end, the ALJ essentially denied Plaintiff's DIB claim at Step 2,[27] concluding that he did not have any "severe impairments" during the relevant time period (i.e., May 18, 2007 through March 3, 2008) due to insufficient evidence, noting that the record did not contain "a single encounter with the medical community between the alleged onset date and the date last insured." (R. at 16). However, Dr. Tran's evaluation of Plaintiff's DIB claim states that Plaintiff had severe impairments during the period in question, notably a degenerative back disorder and COPD. (R. at 51). Although Dr. Tran noted that there was insufficient medical evidence in the record to support the DIB claim, he did not conclude, as the ALJ commented, that Plaintiff had no encounters with the medical community during that time period. (*Id*.). A further review of the record indicates that the ALJ's conclusory statements to this effect are erroneous because the notes from the VA state that he received treatment from the VA Butler facility on March 3, 2008, although no corresponding treatment notes are provided in the administrative record.[28] (R. at 276). The VA records further state that Plaintiff was diagnosed with COPD in 2006, reported back problems for a number of years, and among other things, had an MRI on his lumbar spine showing abnormalities and degenerative changes in 2002. (R. at 276, 288, 290). The severe

---

[27] The ALJ's analysis at Step 2 to determine whether or not an alleged impairment is "severe," is no more than a "*de minimis* screening device to dispose of groundless claims." *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). Step 2 merely serves a minimal gate-keeping function, and Plaintiff's burden to demonstrate a severe impairment is not an exacting one. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85–28, 1985 WL 56856 at *3). Reasonable doubts regarding the evidence should be construed in the light most favorable to the claimant at Step 2. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003)). Further, the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *McCrea*, 370 F.3d at 360–61. However, if the ALJ does not deny benefits at Step 2, but instead proceeds to analyze the claims under the remaining steps, a remand is not generally warranted due to the ALJ's failure to describe an alleged impairment as "severe" at Step 2, unless such error undermines the ALJ's analysis of the remaining steps and/or the ultimate disability determination. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)); *see also Niglio v. Colvin*, Civ. A. No. 12-1583, 2013 WL 2896875, at *8 (W.D. Pa. Jun. 13, 2013).

[28] Aside from references within the VA Pittsburgh treatment notes to Plaintiff's medications, the record does not include any medical records from the VA in Alaska, despite Plaintiff noting on his application that he treated at the VA in Alaska for his COPD and back disorder from February 15, 2009 through October 30, 2009. (R. at 182).

impairment diagnosis of Dr. Tran is also consistent with the fact that Plaintiff had previously applied for SSI and DIB benefits, with such claims being denied at the hearing level on May 17, 2007. (R. at 41).

Beyond these apparent errors, the Court also concurs with Plaintiff's position that the two evaluations by Dr. Tran are not entirely consistent, given that he found insufficient evidence to evaluate the DIB claim but concluded that Plaintiff had an RFC of light work with certain limitations for the SSI claim. (*See* Docket No. 11). Such findings are not completely congruent because the periods of time associated with the two claims overlap, (i.e., the DIB period is May 18, 2007 through March 31, 2008 and the SSI period is May 18, 2007 through October 18, 2012). (R. at 40-54). The ALJ limited Plaintiff to light work as did Dr. Tran in his SSI evaluation but without offering any specific support in the record, and contrary to Dr. Tran's opinion, the ALJ went on to comment, that "the purely objective record would tend to support a finding that he could do medium or even heavy work from a musculoskeletal standpoint." (R. at 18). Again, the ALJ made no findings concerning either evaluation by Dr. Tran and the Court cannot credit Defendant's *post-hoc* explanation for how the ALJ may have interpreted or relied upon such medical opinion evidence. *See Fargnoli*, 247 F.3d at 44, n.7. Finally, Dr. Tran's assessment was based on his evaluation of the medical evidence in the file as of March 17, 2011, (R. at 41, 50), and the balance of the medical records from the relevant period ending on October 18, 2012 have never been evaluated by a consultative physician or even a file examiner.[29] (*See* R. at 327-540). As Plaintiff points out in his brief, certain references in the treatment records

---

[29] The Court recognizes that a blank functional assessment form is included within the VA records and the treatment notes state that he was told by an employee of the VA that the form would not be filled out if he failed to attend physical therapy. (R. at 323-324). However, the ALJ made no findings concerning this portion of the record and the Court can only conclude that it was not considered by the ALJ.

indicate that his condition likely deteriorated during this subsequent period of time. (*See* Docket No. 11).

This Court has repeatedly recognized the principle that RFC assessments can rarely be made by an ALJ without consideration of a physician's assessment of the claimant's workplace abilities. *See e.g., Biller v. Colvin*, 962 F. Supp. 2d 761, 778-79 (W.D. Pa. 2013) (quoting *Gormont v. Astrue*, Civ. No. 11-2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013) ("Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant.")). Absent supporting medical opinion evidence, an ALJ's discussion of the medical records often amounts to his or her own lay opinion concerning the claimant's functional abilities. *See Soto v. Colvin*, Civ. A. No. 14-09, 2014 WL 4384501, at *7 (W.D. Pa. Sept. 4, 2014) (citing *Gunder v. Astrue*, 2012 WL 511936 at *15 (M.D. Pa. 2012) ("Bare medical records without expert medical interpretation are rarely enough to establish a claimant's residual functional capacity.")). The law is also clear that an ALJ is tasked with weighing all of the evidence of record and resolving conflicts in same. *See Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000). Further, when a conflict in the evidence exists, the ALJ may choose what evidence to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). After applying these principles to the instant matter, this Court believes that a remand is required for further development and evaluation of the record as the ALJ's analysis of certain facts does not provide confidence that the RFC finding of light work should be granted deference. Among them, the ALJ:

- discredited Plaintiff's testimony that he had sustained multiple rib fractures, (R. at 33), commenting that the record supported only one, uncomplicated rib fracture, (R. at 16), but the objective medical evidence reveals that Plaintiff sustained muscle strains in

his ribcage area in November 2011, sought treatment throughout 2012 for such condition with repeated medical findings of issues with his ribs, including a fracture of his 10th rib in April of 2012; (R. at 387-389; 409);[30]

- relied on findings by a primary care physician that Plaintiff was capable of walking with a normal gait and able to get up and down without difficulty (R. at 18), but did not mention contrary objective evidence that he was examined on other occasions with an antalgic gait, and had difficulties feeling and moving his extremities, (R. at 290);

- concluded that Plaintiff has not been using medications of the types or in the doses ordinarily given to people experiencing severe symptoms, and that his pain is managed with non-narcotic analgesic medication, (R. at 18), but the objective medical record shows that he received dilaudid IV in November 2009, and was prescribed other narcotics such as Vicodin at points throughout his treatment history; and,

- stated that "not long before Plaintiff filed for supplemental security income, he received treatment at a VA facility, after which he was said to be 'returning home to his parents' house who have dementia." (R. at 18). But, the record reveals that only his mother has dementia, (R. at 298), Plaintiff returned to his parents' home in 2009, and he presented to the VA for treatment around that time but did not file for benefits until February of 2011, (R. at 290, 298). Hence, in this Court's estimation, the purpose of Plaintiff's return to Pennsylvania from Alaska in 2009 to help his parents should not have been used to discredit his testimony and subjective complaints of pain.

For all of these reasons, the Court finds that the RFC finding that Plaintiff is capable of a range of light work is not supported by substantial evidence. Accordingly, the Court will remand the matter to the Commissioner with specific instructions to reopen and fully develop the record as to Plaintiff's claims for DIB and SSI benefits. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d

---

[30] The additional evidence presented to the Appeals Council demonstrates that records during the relevant time period show that he sustained fractures of the 6th, 7th, and 8th ribs as well. (R. at 409, 543). Although a remand is not ordered on this basis, as Plaintiff has not moved for a sentence six remand under § 405(g), such records should be considered after the record is reopened and evaluated upon remand.

798, 800 (3d Cir.2010); *see also Raisley v. Astrue*, Civ. A. No. 12–606, 2013 WL 440971, at *25 (W.D. Pa. Feb.5, 2013) (citing same).

    2. <u>Alleged Step 2 Error</u>

    Plaintiff alternatively argues that a remand is warranted based on the failure of the ALJ to find that he had a severe kidney disorder at Step 2, a position which Defendant also contests. (Docket Nos. 11, 13). Given that the Court has determined that this matter must be remanded and that the record should be reopened and more fully evaluated by the agency, it is anticipated that the ALJ will necessarily evaluate Plaintiff's claimed severe kidney disorder more thoroughly upon remand. *See Soto*, 2014 WL 4384501, at *n.11 ("Plaintiff also challenges that ALJ's credibility determination. In light of the errors identified above, it is anticipated that the ALJ will necessarily reevaluate Plaintiff's credibility on remand."). Therefore, such arguments are moot and no further discussion is necessary by this Court.

## VI.    CONCLUSION

    Based upon the foregoing, the Court holds that the ultimate decision by the ALJ to deny benefits to Plaintiff was not supported by substantial evidence in the administrative record. Accordingly, Plaintiff's Motion for Summary Judgment [9] is GRANTED, in part, and DENIED, in part; Defendant's Motion for Summary Judgment [12] is DENIED; and this matter is REMANDED for further consideration by the ALJ, consistent with this Memorandum Opinion. Appropriate Orders follow.

                                         *s/Nora Barry Fischer*
                                         Nora Barry Fischer
                                         U.S. District Judge

Date:          October 23, 2014

cc/ecf:        All counsel of record.